**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF PUERTO RICO**

| | |
|---|---|
| PEDRO GUILLERMO ROMERO-COMAS,<br><br>**Plaintiff,**<br><br>**v.**<br><br>HOSPITAL ESPAÑOL AUXILIO MUTUO DE PUERTO RICO, INC., *et. al.*,<br><br>**Defendants.** | **Civil No.** 25—1189 (FAB) |

**MEMORANDUM AND ORDER**

BESOSA, Senior District Judge.

Before the Court is defendant Hospital Español Auxilio Mutuo De Puerto Rico, Inc.'s ("Auxilio Mutuo") motion for partial summary judgment and its statement of uncontested facts and memorandum of law (docket numbers 38 and 39), which have been joined by defendant Dr. Juan V. Del Río-Martín (Docket No. 40) (collectively "defendants"). For the following reasons, defendant Auxilio Mutuo's motion, joined by Dr. Del Río, is **GRANTED.**

## I. Background

In this diversity action plaintiff Pedro Guillermo Romero-Comas alleges that Auxilio Mutuo and Dr. Del Río committed medical malpractice related to a bile duct reconstruction surgery he performed at the Auxilio Mutuo Hospital on December 15, 2021. (Docket No. 1 at p. 2.) Plaintiff Pedro Romero-Comas claims that Dr. Del Río's negligence during and after the surgery resulted in

his subsequent diagnosis with a ventral abdominal wall hernia requiring several CT guided drainage procedures and eventual ventral hernia repair. Id. at p. 3. The complaint seeks $500,000 in damages. Id. at p. 7.

During the relevant time-period, Auxilio Mutuo had an agreement with the University of Puerto Rico Medical Sciences Campus Department of Surgery to participate in a residency program for the education of resident doctors. (Docket No. 38-1.) Dr. Del Río served as a faculty member of this program and was responsible for supervising the care provided by the residents. (Docket No. 38-2.) While receiving care at Auxilio Mutuo, Mr. Romero signed a consent form which contained the following paragraph: "I have been informed that the Hospital maintains academic affiliation and collaboration agreements with educational institutions. Consequently, there is a possibility that physicians, nursing staff, and other healthcare professionals in training may participate in my healthcare, under the corresponding supervision." (Docket No. 54-1 at p. 3.) During Mr. Romero's surgery on December 15, 2021, Dr. Del Río was assisted by resident Dr. Valerie Cabrera-León. (Docket No. 38-3.)

Following the close of discovery, Auxilio Mutuo filed a motion for partial summary judgment, later joined by Dr. Del Río, as to a single issue: whether the Regional Academic Medical Centers

Act, P.R. Laws Ann. tit. 24, § 10035 ("RAMC Act"), which limits the liability of certain teaching hospitals for damages suffered by individuals during the exercise of their teaching duties, limits the amount plaintiff may recover on his claim. In opposition, plaintiff argues that defendants may not claim the RAMC Act protections because they failed to inform him of the legal consequences of receiving care from a RAMC Act facility. Based on its analysis, the Court concludes that the liability limitations contained in the RAMC Act are not conditioned upon receipt of the patient's informed consent to receiving treatment under a RAMC Act educational program. Accordingly, the Court **GRANTS** Auxilio Mutuo's motion for partial summary judgment, joined by Dr. Del Río, and limits Mr. Romero's claim against both of them to the amount of liability imposed by the Commonwealth.

## II. Legal Standard

A court must grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A factual dispute is 'genuine' if it could be resolved in favor of either party; it is 'material' if it potentially affects the outcome of the case." Seda-Rodríguez v. Centro Médico Episcopal San Lucas Ponce, Inc., No. 23-1207, 2025 WL 918730, at *3 (D.P.R. Mar. 26, 2025) (Delgado-Colón, J.) (citing Murray v.

Warren Pumps, LLC, 821 F.3d 77, 83 (1st Cir. 2016)). After considering the facts in the light most favorable to the non-moving party, here, Mr. Romero, the Court "determine[s] whether either of the parties deserves judgment as a matter of law on facts that are not disputed." Adria Int'l Grp., Inc. v. Ferré Dev., Inc., 241 F.3d 103, 107 (1st Cir. 2001).

Because this Court is sitting in diversity, it must apply federal procedural law but state substantive law. Sueiro-Algarín v. CMT Hosp. Hima San Pablo Caguas, 957 F.3d 30, 39 (1st Cir. 2020). Puerto Rico is treated as a state for diversity purposes. Quality Cleaning Prods. R.C., Inc. v. SCA Tissue N. Am., LLC, 794 F.3d 200, 204 (1st Cir. 2015). When sitting in diversity, the aim of a federal court is to "ascertain, as best we can, the rule that the state's highest tribunal would likely follow." Porter v. Nutter, 913 F.2d 37, 41 (1st Cir. 1990).

**III. Discussion**

Auxilio Mutuo's motion presents a narrow question: whether the liability limits in the RAMC Act are conditioned upon a patient providing his or her informed consent to treatment as part of a

covered educational residency program.[1] At present, no court, either in this district, in the first circuit, or in Puerto Rico jurisprudence, has definitively answered this question. See Seda-Rodríguez, 2025 WL 918730 at *10, n. 10 ("[W]hether [] consent is even required to apply the RAMC Act's liability caps are questions that remain open . . ."). To answer this question, the Court, "begins with the text of the underlying statute, and ends there as well if the text is unambiguous." Id., 2025 WL 918730 at *6 (citing In re Plaza Resort at Palmas, Inc., 741 F.3d 269, 274 (1st Cir. 2014)); P.R. Laws Ann. tit. 31, § 5341 (2020).

The RAMC Act was enacted on July 27, 2006 and created what it termed Regional Academic Medical Centers (RAMCs), defined as "[a] group of one (1) or more hospitals, health facilities, medical groups and health professionals education and training programs related to an accredited School of Medicine whose mission is to educate, conduct research and provide health services." P.R. Laws Ann. tit. 24, § 10031 (2007). The purpose of the RAMCs, according to the statute, is "to develop and strengthen a comprehensive

[1] In his opposition to defendant's motion, plaintiff also makes a cursory argument that the RAMC Act does not apply to a hospital's "administrative staff." (Docket No. 46 at p. 9.) Plaintiff does not explain how this argument bears on his claim, given he has named as defendants only Auxilio Mutuo itself and Dr. Del Río, who is not an administrative employee. Accordingly, the Court does not address it. In any event, "[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived." See United States v. Zannino, 895 F.2d 1, 17 (1st Cir. 1990).

public health system," by "offering and providing cost-effective, accessible and quality health services to all persons equally" while, "at the same time, develop[ing] and strengthen[ing] educational programs for health professionals." Id. § 10033. Importantly, the RAMC Act imposes limits on the liability of RAMCs:

> The limitations imposed in §§ 3077 *et seq.* of Title 32 shall be extended to Regional Academic Medical Centers and the faculty members thereof for the medical procedures performed at said Centers in the exercise of their academic and teaching duties. Said limitation establishes a maximum of $75,000 for damages suffered by a person and up to $150,000 when the damages were suffered by more than one person or when there are several causes of action to which a single injured party is entitled.

P.R. Laws Ann. tit. 24, § 10031 (2023). In contrast to the limitations of liability extended to RAMCs and their faculty, section 10035 grants absolute immunity to "students and physicians enrolled in the internship, residency, and fellowship programs of public and private medical-hospital institutions, so that they are not brought into an action before the courts or any forum of competent jurisdiction." Id.

A defendant seeking to take advantage of the RAMC Act's liability caps must, on summary judgment, "establish that no genuine issue of fact exists as to whether the alleged damages occurred while in the exercise of teaching duties." Seda-Rodríguez, 2025 WL 918730 at *8; see Rodríguez-Cedeño v. Sur Med

Med. Ctr., 977 F. Supp. 2d 115 (D.P.R. 2013) (holding that the RAMC Act's liability limits only apply to conduct undertaken in exercise of the RAMC's "teaching duties."). The burden of establishing that the conduct at issue was performed in the exercise of its teaching duties is born by the defendant, and the issue must be submitted to a jury "unless the evidence 'is so one-sided that there is no room for reasonable dispute.'" Id. (quoting Pérez-Pérez v. Hosp. San Lucas, Inc., 113 F.4th 1, 7 (1st Cir. 2024)).

Here, both parties concede that Auxilio Mutuo is an RAMC and subject to the provisions of the RAMC Act; defendants have submitted evidence to this effect. (Docket No. 38 at p. 10; Docket No. 46 at p. 6; Docket No. 38-1.) Defendants have also submitted uncontroverted evidence that Dr. Del Río was a faculty member of Auxilio Mutuo's resident education program at the time of plaintiff's surgery, and that he was assisted during the surgery by Dr. Cabrera, a student of that program. Docket No. 44, (faculty appointment); Docket No. 38-3 (surgery case report stating resident Dr. Cabrera assisted Dr. Del Río). Plaintiff does not dispute that Dr. Del Río was a faculty member nor that the bile duct surgery was performed in the exercise of Auxilio Mutuo and Dr. Del Río's teaching duties. Plaintiff argues rather, that the liability limitations imposed by the RAMC Act are not applicable

to his claim because Auxilio Mutuo did not inform him of the legal consequences of receiving care as part of an RAMC teaching program.

Plaintiff's argument finds no support in the unambiguous text of section 10035. Nowhere in the language of section 10035 is there any mention whatsoever of a requirement to inform patients of a hospital's status as an RAMC before the statute's liability limitations apply. The Court will not read such a condition into the text of the statute because in Puerto Rico "a court is not authorized to add limitations or restrictions that do not appear in the text of a law, or to insert what has been omitted when construing a statute with the pretext of seeking the legislative intent." Gautier Vega v. State Election Com'n, 105 P.R. Offic. Trans. 26, __ (2020). The requirement to inform patients of a hospital's RAMC status does not appear anywhere else within the RAMC Act, nor can that requirement be inferred when reading its provisions together as a whole. Id. ("When interpreting the text of a legal provision, it must be construed jointly with the rest of the provisions in the law, either because they are contained therein or because they stem or may be inferred therefrom.").

This reading is also consistent with how courts have construed other language in section 10035. In Pérez-Pérez v. Hosp. San Lucas, Inc. the First Circuit Court of Appeals held that whether care was provided in furtherance of an RAMC's "teaching duties"

was a mixed question of fact and law. 113 F.4th at 7 ("Factually, what is the agreed-upon relationship with the hospital, and what was the person doing on the relevant occasion? Legally, is that relationship that of a 'faculty member' within the meaning of the statute, and is certain conduct 'teaching'?"). As relevant to this case, these inquiries both turn on objective determinations. It is not relevant whether a plaintiff was aware that the physician providing care was doing so in furtherance of his or her teaching duties — it matters only whether, as a factual and legal matter, that he or she was. So too here. The relevant question is not whether plaintiff was aware that Auxilio Mutuo was an RAMC, only that it was at the time plaintiff received treatment.

While the unambiguous text of section 10035 is sufficient to end the inquiry, analysis of the statute's structure and scheme only lends additional support to the conclusion that a patient's informed consent is not a perquisite to the applicability of the RAMC Act's liability caps. The first sentence of section 10035 purports to extend the liability limits contained in Title 32, section 3077 of the Laws of Puerto Rico to RAMCs. P.R. Laws Ann. tit. 24, § 10035 (2023) ("The limitations imposed in §§ 3077 *et seq.* of Title 32 shall be extended to Regional Academic Medical Centers and the faculty members thereof . . . ."). In section 3077, the Puerto Rico Legislative Assembly waived sovereign

immunity for suits against the Commonwealth of Puerto Rico for enumerated causes of action, including for certain medical malpractice actions against doctors administering care at public institutions. Kenyon v. Cedeño-Rivera, 47 F.4th 12, 19, n.4 (1st Cir. 2022); P.R. Laws Ann. tit. 32, § 3077(a) (2011). It is a fundamental premise of sovereign immunity that, absent a waiver, no suit may be maintained against a sovereign entity. *Sovereign Immunity*, BLACK'S LAW DICTIONARY (12th ed. 2024); Defendini Collazo v. Commonwealth, 134 D.P.R. 28, 40, 1993 WL 839857 (1993). A plaintiff's right to sue a sovereign entity is therefore not conditioned upon the plaintiff's knowledge of the entity's sovereign status at the time of the harm, but rather is based entirely upon the sovereign's waiver of its immunity and is subject to any condition and limitation which it places on that waiver. See Martínez v. Estado Libre Asociado de Puerto Rico, 98 TSPR 51, 5 (1998) (Naveira de Rodón, J., dissenting from denial of certiorari) ("The State, in exercising its power to waive sovereign immunity, can do so with or without limitations.") (certified translation provided by the Court). In section 3077, Puerto Rico waived its sovereign immunity for certain causes of action but limited its liability to $75,000 (or $150,000 for multiple plaintiffs or multiple causes of action). P.R. Laws Ann. tit. 32, § 3077(a) (2011). Section 3077 also requires plaintiffs to provide

notice of their claim to the Attorney General of Puerto Rico within 90 days, or else the claim is forfeited. Id. § 3077a. The Supreme Court of Puerto Rico has held that a plaintiff's ignorance of these conditions is no bar to their applicability. See Berríos Román v. E.L.A., 2007 TSPR 118, 18 (2007) (citing P.R. Laws ann. tit. 31 § 2).

The RAMC Act's reference to the liability limits in section 3077, which themselves stem from a waiver of sovereign immunity, informs the interpretation of the liability limits in section 10035. While the immunity enjoyed by the Commonwealth of Puerto Rico inheres from its status as a sovereign, the protections extended to RAMCs (including liability caps for RAMCs and immunity for students of RAMC programs) are "granted by the Legislature based on public policy considerations." Figueroa v. Centro de Salud Mario Canales Torresola, 97 P.R. Offic. Trans. 48, __ (2017). Thus, in the same way that the Commonwealth, in waiving its inherent sovereign immunity, may place any condition or limitation it wishes on the waiver, when the Legislative Assembly extends similar protections on private parties in the public interest, it too may place conditions or limitations on those protections. Id. at __, n.6 (acknowledging the differing treatment by the legislature of public hospitals versus RAMCs). In the RAMC Act, the Legislative Assembly saw fit to extend the special litigation

status of certain Commonwealth entities, including public hospitals and their doctors, to private medical institutions that are engaged in the public purpose of education. In so doing, it granted absolute immunity to the students participating in RAMC educational programs, and limited liability to the RAMCs and their faculty. The Legislature also did not carry over section 3077's 90-day notice requirement to either group. Thus, the design of section 10035, in which the Legislative Assembly imported the liability limits from section 3077's sovereign immunity waiver and extended them to RAMCs, but granted absolute immunity to students, and completely leaving out the 90-day notice requirement, evidences a carefully crafted scheme suited to the needs of the Puerto Rican healthcare system. This Court will not judicially modify that scheme by imposing additional requirements on RAMCs that the Legislative Assembly did not see fit to include. Martínez, 98 TSPR 51, 6 ("We should not, by judicial fiat, impose limitations and conditions [on waivers of sovereign immunity] where they do not exist.") (certified translation provided by the Court).

Even assuming that section 10035 did require RAMCs to inform patients of their status as RAMCs, defendants here have submitted a consent form signed by plaintiff in which he acknowledges that Auxilio Mutuo maintains academic affiliations with teaching

institutions and that student physicians may be involved in his treatment. See Docket No. 54-1 at p. 3. Although plaintiff contends he never saw the consent form, naked assertions in his deposition testimony, standing alone, are insufficient to create a genuine factual dispute. United States v. Romero, No. 15 C 5607, 2017 WL 61025 at *3 (N.D. Ill. Jan. 5, 2017) (deposition testimony that plaintiff didn't remember signing note insufficient to create genuine dispute of fact); Rodríguez v. Encompass Health Rehab. Hosp. of San Juan, Inc., 126 F.4th 773, 777 (1st Cir. 2025) ("[A] party opposing summary judgment must adduce specific evidence sufficient to create a genuine issue of material fact.").

Regardless, given the Court's holding that section 10035 does not require a plaintiff's informed consent before its liability caps become applicable, whether plaintiff effectively gave his consent to treatment is not a fact that would affect the outcome of the case and therefore is not material. Arocho-Rodríguez v. Concepción, 177 F.4th 39, 43 (1st Cir. 2026) ("Facts are material if they 'might affect the outcome of the suit under the governing law.'") (quoting Dusel v. Factory Mut. Ins., 52 F.4th 495, 502-03 (1st Cir. 2022)). Thus, because there is no genuine dispute of material fact, and because defendants Auxilio Mutuo and Dr. Del Río are entitled to judgment as a matter of law, defendants' motion

for partial summary judgment is **GRANTED** and Mr. Romero's claim is limited to 75,000. Partial Judgment shall be entered accordingly.

Finally, in light of the Court's holding that the RAMC Act's liability limits apply, the question arises as to whether this Court retains subject-matter jurisdiction over this action. "Federal courts, as courts of limited jurisdiction, may not presume the existence of subject matter jurisdiction, but, rather, must appraise their own authority to hear and determine particular cases." Watchtower Bible & Tract Soc. of New York, Inc. v. Colombani, 712 F.3d 6, 10 (1st Cir. 2013). In order to invoke a federal court's diversity jurisdiction, as plaintiff does here, there must be both complete diversity of citizenship between the parties and the amount in controversy must exceed $75,000. 28 U.S.C. § 1332. Plaintiffs bear the burden of showing that the actual amount in controversy exceeds the $75,000 jurisdictional minimum. García v. Municipality of Orocovis, 356 F. Supp. 2d 87, 91 (D.P.R. 2005). Furthermore, the Supreme Court of Puerto Rico has held that section 10035's liability caps ($75,000, or if more than one plaintiff or if a single plaintiff with multiple causes of action, $150,000) apply globally to all claims against all defendants, such that a plaintiff may recover only up to the applicable limit from all defendants in total. Ortiz Santiago v. Hosp. Episcopal San Lucas, Inc., 2020 TSPR 109 (2020).

Accordingly, because the Court holds that the RAMC Act's liability limits apply to plaintiff's claim, plaintiff is **ORDERED TO SHOW CAUSE, no later than September 30, 2026** why this case should not be dismissed for lack of subject-matter jurisdiction. See Fed. R. Civ. P., Rule 12(h)(3).

**IT IS SO ORDERED.**

San Juan, Puerto Rico, September 11, 2026.

s/ Francisco A. Besosa
FRANCISCO A. BESOSA
SENIOR UNITED STATES DISTRICT JUDGE